FILED

JAN 1 8 2007

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>CARMEN L. RODRIGUEZ,<br><br>        Debtor.<br><hr>CARMEN L. RODRIGUEZ,<br><br>        Plaintiff,<br><br>v.<br><br>DORINE'S BAIL BONDS, INC.,<br><br>        Defendant. | Chapter 13<br><br>No. 4-05-BK-06261-EWH<br><br><br>Adv. No. 4-06-00043<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

The Debtor seeks to avoid two Deeds of Trust on her homestead. Because she lacks standing to seek such relief, this adversary will be dismissed.

## II. FACTS AND PROCEDURAL HISTORY

In November of 2004, the Debtor's son was arrested. In response to his request that she obtain his release from jail, the Debtor, a widow in her 70's, using information from the yellow pages, contacted a number of bail bond companies to see if a bail bond

could be obtained using her son's van as collateral. None of the companies she contacted would accept the van as collateral. Ultimately, the Debtor retained the services of Dorine's Bail Bonds to post a $7,500 bond to obtain his release. Dorine's Bail Bonds agreed to post the bond if real property was pledged as collateral. The Debtor and her daughter testified that the Debtor offered to pledge a vacant lot she owned in Benson ("Benson Lot"). Dorine Garcia, the principal of Dorine's Bail Bonds and the sole shareholder of Dorine's Bail Bonds Inc., testified that the only collateral that was offered for the first bond was the Debtor's home.

In connection with the issuance of the $7,500 bond, the Debtor executed an Indemnity Agreement, Waiver of Abandonment of Homestead, a Deed of Trust and Assignment of Rents ("First Deed of Trust"), Durable Power of Attorney, and a Bail Bond Agreement. All of the agreements, other than the First Deed of Trust, were between the Debtor and "Dorine's Bail Bonds." The First Deed of Trust lists Dorine's Bail Bonds, Inc. as both the trustee and the beneficiary at the same address as Dorine's Bail Bonds. The Debtor also signed and was given a copy of a Collateral Receipt which lists the Debtor's home as her address and the collateral received as being a "prop lien."[1] The First Deed of Trust, which lists the property pledged as the Debtor's home, was recorded on November 15, 2004.

The Debtor's son was re-arrested in January, 2005. The Debtor again used Dorine's Bail Bonds to post a bond of $25,000 to obtain his release. On January 6,

---

[1] A.R.S. § 20-340.01(E) requires that bail bondsmen issue pre-numbered receipts to the party paying for the bond. Whether the receipts provided to the Debtor met the requirement of A.R.S. § 20-340.01 is not addressed in this decision.

2005, the Debtor executed a second set of agreements with Dorine's Bail Bonds and a Deed of Trust and Assignment of Rents ("Second Deed of Trust") which lists Dorine's Bail Bonds, Inc. as both the trustee and the beneficiary at the same address as Dorine's Bail Bonds. The Debtor executed and was given a copy of a second Collateral Receipt listing her home address as her address and describing the collateral received as a "prop lien." The Second Deed of Trust was recorded on April 29, 2005. Like the First Deed of Trust, it lists the Debtor's home as the pledged property. Again, the parties disagree about what collateral the Debtor agreed to pledge. The Debtor asserts that she only agreed to place a Second Deed of Trust on the Benson Lot. Dorine Garcia testified that the Debtor agreed to pledge her home.

The Debtor's son was re-arrested in March of 2005. She again retained the services of Dorine's Bail Bonds to post a $20,000 bond to obtain his release. No separate agreements were executed by the Debtor with respect to the $20,000 bond. Dorine Garcia made changes to the Second Deed of Trust, which added the amount of the $20,000 bond to the Second Deed of Trust, so that the total amount of the debt secured by the Second Deed of Trust was $45,000. Dorine Garcia testified that the changes were made in front of the Debtor and with her consent. The Debtor did not initial the changes and denies that the changes were made in her presence or that she agreed to increase the amount of the indebtedness secured by the Second Deed of Trust from $25,000 to $45,000.

Dorine Garcia testified that the first and only time the Debtor mentioned the Benson Lot was in response to an inquiry about supplemental collateral for the third bond. In fact, the third Collateral Receipt issued to the Debtor on March 24, 2005, lists the

Benson Lot as her home address and again describes the collateral received as a "prop lien."

The Debtor and her daughter, who was present when all the agreements were signed, testified that Dorine Garcia never explained the content of any of the documents the Debtor was asked to sign. Dorine Garcia disputed that testimony. It is undisputed that Debtor never read any of the documents she signed. The Debtor testified that she signed the documents because she was told by Dorine Garcia that if she did not do so, her son would not be released from jail.

Copies of the agreements, including the First and Second Deeds of Trust, (collectively "Deeds of Trust") were not provided to the Debtor nor did she request copies until this litigation commenced. Debtor testified that she always believed that the only property being pledged to secure three bonds totaling over $50,000 was the Benson Lot. Debtor also testified that she would have never signed any of the documents if she knew that she was pledging her house, rather than the Benson Lot, as collateral for the bonds.

All of the documents were notarized by Dorine Garcia, but the Debtor testified that the documents were not notarized in her presence. While Dorine Garcia disputes that assertion, she conceded that she did not request any identification from the Debtor before notarizing her signature. Dorine Garcia also did not maintain a "notary book" in 2004 and 2005.

4

The Debtor's son did not timely appear for his court date and all three bonds were forfeited to the State of Arizona in June of 2005.[2] Thereafter, Dorine's Bail Bonds, Inc., ("Dorine's") retained counsel who substituted in as the trustee under the Deeds of Trust. Thereafter, a Trustee's Sale was commenced to foreclose the Debtor's house. In response, the Debtor filed a chapter 13 petition.

The Debtor's Schedules value the Benson Lot at $2,700. During the trial, Debtor testified that she had an oral offer of $10,000 for it and believed it was worth about $22,000. The Debtor's Chapter 13 plan provides for monthly payments of $25 a month for 60 months with no return to unsecured creditors whose claims total $7,000. All of the Plan payments will be used to pay the Debtor's lawyer or the Chapter 13 Trustee.

Shortly after the Chapter 13 case was filed, Dorine's moved for stay relief. The Debtor objected asserting that Dorine's did not have a secured claim due to various alleged defects in the Deeds of Trust and because the Debtor alleged that Dorine Garcia had fraudulently included the legal description of Debtor's home in the Deeds of Trust rather than the Benson Lot. Debtor then filed this adversary seeking a determination of the validity of the Deeds of Trust. Dorine's has agreed to continue the final hearing on its motion for relief from stay until this adversary is decided. Debtor has made no payments of any kind to Dorine's since filing her Chapter 13 case.

---

[2] Debtor's post-trial brief asserts that because canceled checks were not produced at trial, there is no proof that Dorine's Bail Bonds, Inc. actually paid Pima County for the forfeited bonds. This assertion is without merit. The Joint Pre-Trial Statement's – Statement of Uncontested Issues of Material Fact included a statement that Dorine's Bail Bonds was required to pay Pima County Superior Court the full amount of the bonds. Three different judgments of bond forfeiture were also admitted into evidence without objection from the Debtor.

final hearing on its motion for relief from stay until this adversary is decided. Debtor has made no payments of any kind to Dorine's since filing her Chapter 13 case.

The Debtor's complaint seeks a determination that the two Deeds of Trust are unenforceable because: (1) they were not properly notarized; (2) using the Debtor's home as the pledged collateral was fraudulent because the Debtor only agreed to pledge the Benson Lot; (3) the Second Deed of Trust was not timely recorded; (4) the agreements secured by the Deeds of Trust were too incomplete to be valid contracts; (5) Dorine's Bail Bonds, Inc. is not qualified under Arizona law to act as a trustee of the Deeds of Trust; and (6) the Second Deed of Trust was altered to add $20,000 to the amount pledged without the Debtor's consent. The relief requested was a determination that the Deeds of Trust are invalid and a declaration that Dorine's claim is unsecured. The Complaint does not include a jurisdictional statement. The Joint Pretrial Statement asserts that this Court has jurisdiction over the adversary under 11 U.S.C. §§ 548 and 105.

Trial was held on September 12, 2006. After a number of extensions, both sides submitted closing argument in the form of post-trial briefs. The Debtor's Post-Trial Memorandum asserts that because the Second Deed of Trust was recorded more than 60 days after execution and was altered without Debtor's consent, it can be avoided by the Debtor under 11 U.S.C. §§ 544 and 522(h). The Debtor's Post-Trial Memorandum also includes an allegation, not made in the Complaint, but raised at trial, that in order for the Deeds of Trust to be valid and enforceable, the beneficiary should be Dorine's Bail Bonds – the party to the various agreements purportedly secured by the Deeds of Trust, not Dorine's Bail Bonds, Inc., a separate legal entity.

6

## III. STATEMENT OF JURISDICTION

If the court has jurisdiction, it would be pursuant to 28 U.S.C. § 157(b)(2)(F) and 11 U.S.C. § 522(h).

## IV. ISSUES

Does the court have jurisdiction to consider Debtor's claims? If so, are the Deeds of Trust void or voidable under applicable state or bankruptcy law?

## V. DISCUSSION

As noted in the Defendant's post-trial brief, the only issue in this adversary is whether the debt due to Dorine's is secured by the Debtor's home. In order to challenge Dorine's security interest, the Debtor must have standing to do so. If the Debtor does not have such standing, this court lacks subject matter jurisdiction to decide if the Deeds of Trust create a valid security interest in Debtor's home. The jurisdiction of the Bankruptcy Court is grounded in and limited by statute. Celotex v. Edwards, 514 U.S. 300, 115 S. Ct. 1493, 1498 (1995); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citation omitted) ("Without jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

The Debtor asserts that she has standing to challenge the validity of the Deeds of Trust based on 11. U.S.C. §§ 522(g) and (h). Section 552(h) provides as follows:

7

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if --
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> (2) the trustee does not attempt to avoid such transfer.

Section 522(g)(1) limits the Debtor's avoidance rights by providing that a debtor may only exempt property recovered under § 522(h) if: (1) the transfer was not voluntary, and (2) the debtor did not conceal the property.[3]

Read together, § 522 (g) and § 522 (h) allow a debtor to avoid the transfer of property that the trustee could have avoided, but failed to do so if the property is legitimately exempt, was not concealed and was not voluntarily transferred. In this case, the only issue which could preclude Debtor's standing to challenge the Deeds of Trust is whether she voluntarily granted a security interest in her house when she executed the Deeds of Trust.

The purpose for excepting a voluntary transfer of property from a debtor's avoidance rights is to prevent a debtor from receiving a windfall, which would enable him to benefit from his own voluntary act. In re Davis, 169 B.R. 285, 295 (Bankr. E.D. N.Y. 1994). However, the Bankruptcy Code does not define the term "voluntary" for

---

[3] There is a split of authority on whether Chapter 13 debtors may exercise the trustee's avoidance rights free from the limitations of § 522(g). Compare In re Cohen, 305 B.R. 886, 897 (9th Cir. B.A.P. 2004) (Debtor has concurrent power with the Chapter 13 Trustee to exercise avoidance powers "for the benefit of the estate") with In re Hansen, 332 B.R. 8, 13 (10th Cir. B.A.P. 2005) (Congress limited Chapter 13 debtors' avoidance powers to those set forth in § 522(h)). However, in this case, the Debtor's Chapter 13 plan, which provides for no distribution to creditors other than her lawyer, demonstrates that the Debtor is seeking to avoid the Deeds of Trust, not for the benefit of the Chapter 13 estate, but to preserve Debtor's homestead. Accordingly, the limitations of § 522(g) apply.

8

purposes of a transfer under §§ 522(g). Courts have recognized that involuntary transfer may occur under circumstances which involve fraud, material misrepresentation or coercion. The burden of proving that the transfer was not voluntary is on a debtor. Davis, 169 B.R. at 295, In re Corwin, 135 B.R. 922, 924 (Bankr. S.D. Fla. 1992).

In this case, the Debtor asserts that Dorine Garcia committed fraud by using the Debtor's house as the pledged collateral rather than the Benson Lot. In order to prove that the Debtor's house was fraudulently pledged, the Debtor must demonstrate that Dorine Garcia made a knowingly, materially false representation with the intent of deceiving the Debtor, that the Debtor was both ignorant of the falsity of the representation and had a right to rely on it. Peery v. Hansen, 120 Ariz. 266, 269, 585 P.2d 574, 577 (Ariz. App. 1978).

However, the testimony of the Debtor that she believed the Benson Lot was the collateral for the Deeds of Trust is not credible. Both the Debtor and her daughter testified that they had attempted to obtain a bond to secure the release of Debtor's son by pledging his van. No bonding company would accept the van as adequate collateral. The Debtor's schedules indicate she placed a very low value on the Benson Lot—not even half the value of the first $7,500 bond. Even if the Debtor's testimony at trial that the Benson Lot is worth around $22,000 is accepted, that value is insufficient to adequately collateralize bonds totaling over $50,000. The Debtor was aware that there were only two alternatives to obtain her son's release – (1) pay cash in the full amount

9

of the bond, something the record indicates she did in Tucson City Court[4] or (2) pay a bail bondsman a fee of 10% of the bond and post collateral to cover the cost of the bond in the event it was forfeited. Debtor could not have reasonably believed that any bond would be issued if the pledged collateral was worth far less than the bond.

Even if the Debtor's testimony was credible, she cannot meet the reasonable reliance requirement needed to prove her fraud claim because she did not read the agreements, including the Deeds of Trust. The general rule under Arizona law is that parties have a duty to read the agreements they sign and if they do not do so, they will not be permitted to avoid a contract because they supposed its terms were different than what they really were. See <u>Mutual Benefit Health & Accident Association v. Ferrell</u>, 42 Ariz. 477, 487, 27 P.2d 519, 523 (Ariz. 1933) (overruled on other grounds). There are exceptions to that rule when "there are special and peculiar circumstances justifying the signer in relying upon the representations, such as a fiduciary relation between the parties, that the signer was . . . unable to understand the nature of the agreement and the like." <u>Ferrell</u>, 42 Ariz. at 487-88, 27 P.2d at 523, cited in <u>Darner Motor Sales, Inc. V. Universal Underwriters Insurance Company</u>, 140 Ariz. 383, 399, 682 P.2d 388, 404 (Ariz. 1984).

However, there is no evidence that a fiduciary relationship existed between the Debtor and Dorine's. Nor has any Arizona case or statute been cited by the Debtor that creates such a fiduciary duty. Also, there is no evidence that the Debtor was unable to understand the agreements she signed. She simply did not take the time to read the

---

[4] Transcript at p. 74, lines 23-25.

agreements because she was anxious to obtain her son's release. The Debtor, therefore, has not met her burden of demonstrating that Dorine's committed fraud by including the Debtor's homestead in the Deeds of Trust.

While the Debtor did not prove that Dorine's committed fraud, the transfer may nevertheless not have been voluntary. An involuntary transfer occurs where a debtor is either: (1) subjected to an outside influence which overcame her free will or (2) lacked knowledge of all facts essential to her decision to grant the transfer. In re Corwin, 135 at 924; see also In re Reaves, 8 B.R. 177, 181 ( Bankr. D. S.D. 1981). In this case, the Debtor was not shamed, harassed, insulted or pressured by Dorine Garcia, so there is no basis for assuming that she was not able to exercise her free will. Debtor's disputed testimony was that the content and consequences of the various agreements were not explained to her and that had she known all of the essential facts, she would not have executed the documents, especially if she had been told it could result in the loss of her home. Even if Debtor's allegations are true, they would be insufficient to make the Deeds of Trust involuntary transfers. As one court has noted:

> Financial institutions are not required to issue "Miranda type" admonitions. The failure to explain the effect of the deed of trust is insufficient to show an involuntary transfer. To be involuntary, the debtor must further prove that the creditor pressured him into transferring the property through harassment, insults or shame . . . .

In re Echoles, 21 B.R. 280, 281-82 (Bankr D. Ariz. 1982) (citation omitted). The Debtor was told if she did not execute the documents, her son would not be released from jail, but that was a simple statement of fact. Without adequate collateral for the bonds, the bonds would not be posted and the Debtor's son would have remained in jail. See Corwin, 135 B.R. at 924 (evidence was insufficient to establish that creditor intended to

11

harass, insult or shame the debtors where failure to make the transfer would, in fact, result in serious legal ramifications).

## VI. CONCLUSION

Having failed to establish that the granting of the Deeds of Trust were involuntary transfers as required by § 522(g)(1), the Debtor lacks standing under § 522(h) to set aside the Deeds of Trust. This court, therefore, lacks jurisdiction to decide the claims in the Debtor's Complaint, including the challenge to the validity of the Deeds of Trust based on claims of improper notarization, unauthorized alteration, and the effect of the disparity between the named beneficiary in the Deeds of Trust and the party to the other agreements (i.e. the allegation that Dorine's Bail Bonds is not the same entity as Dorine's Bail Bonds, Inc.).

The foregoing constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. A separate order will be entered this date dismissing this adversary with prejudice. Counsel for Dorine's is also directed to submit an order, upon 10 days' notice to Debtor and her counsel, granting Dorine's relief from the automatic stay.

Dated this 18th day of January, 2007.

*[signature: Eileen W. Hollowell]*

EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

Copy of the foregoing
mailed this 19th day of
January, 2007, to:

Eric Slocum Sparks, Esq.
Eric Slocum Sparks, P.C.
110 South Church Ave. #2270
Tucson, AZ 85701
Attorney for Debtor/Plaintiff

Lisa C. Thompson, Esq.
Thompson law Group, PC
2321 East Speedway Blvd.
Tucson, AZ 85719
Attorneys for Defendant

Dianne C. Kerns
Chapter 13 Trustee
7320 North La Cholla Blvd. #154 PMB 413
Tucson, AZ 85741-2305

Office of the U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ 85003

By_____
    Judicial Assistant

13